117 P.3d 1175 (2005)
STATE of Washington, Respondent,
v.
Lawayne FOSTER, Appellant.
No. 53303-7-I.
Court of Appeals of Washington, Division One.
August 15, 2005.
Dana M. Lind, Nielsen Broman & Koch Pllc, Seattle, WA, for Appellant.
Dana Cashman, King County Prosecutor's Office, Seattle, WA, for Respondent.

PUBLISHED IN PART
PER CURIAM.
¶ 1 Foster appeals his conviction for three counts of Felony Violation of a Court Order (FVNCO) under RCW 26.50.110. Foster claims that because the no-contact order unconstitutionally violates his parental rights, there was insufficient evidence to convict him. He also contends he received ineffective assistance of counsel because his trial attorney stipulated to two prior no-contact order convictions, did not ask to bifurcate consideration of the two prior convictions, and did not ask to redact an e-mail admitted into evidence. Foster also challenges his sentence under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 2536, 159 L.Ed.2d 403 (2004). In his Statement of Additional Grounds, Foster makes several other arguments challenging the validity of the no-contact order. We conclude the no-contact *1176 order did not violate Foster's constitutional rights as a parent and was valid, Foster's lawyer did not provide ineffective assistance of counsel, and Foster's sentence did not violate his Sixth Amendment right to a jury trial under Blakely and Apprendi. We affirm.

FACTS
¶ 2 LaWayne Foster and Shellie Christie were romantically involved and had a daughter together in 1994. Their relationship ended in early 1995. In August 1995, King County Superior Court entered a parenting plan for their daughter, Kendall. The parenting plan designated Christie as the custodial parent and gave Foster visitation rights every other weekend, rotating holidays, and four weeks of vacation.
¶ 3 In April 1998, Christie obtained a protection order under RCW 26.50.060.[1] The protection order prohibited Foster from having contact with Christie and Kendall but allowed Foster written communication by certified mail regarding visitation with Kendall; telephone contact with Kendall during the week from 7 p.m. to 7:30 p.m.; and visitation as provided in the parenting plan with the exchange at the Bellevue Police Department. The protection order also stated either party could seek review of the provisions in the order related to parenting and visitation.
¶ 4 According to Christie, she took Kendall to the Bellevue Police Department on numerous occasions for visitation with Foster but he did not show up. Christie admitted that she refused to comply with the provisions of the parenting plan and was found in contempt for failing to comply with the parenting plan.
¶ 5 On November 17, 1998, Foster was charged in Renton Municipal Court for violation of the April 1998 protection order. On October 12, 1999, Foster pled guilty and was sentenced. As a condition of Foster's sentence, the trial court entered a no-contact order under RCW 10.99.050.[2] The order prohibited Foster from having contact with Christie. The expiration date for the order was October 12, 2001. In February 2000, Foster sought to have the October 1999 no-contact order rescinded but his request was denied.
¶ 6 Christie testified that in January and February 2001 she received several hang-up calls and three voice-mail messages from Foster. Christie said the caller-identification feature on her phone showed the hang-up calls were from Foster. Christie saved two voice-mail messages. In the first message, Foster said Kendall was a nice kid and Christie raised her well. In the second message Foster said,
`It's Ridiculous . . . You Need To Get Over With It . . . Fast, Fast . . . Fast . . . If You Call 9-1-1 I'll Go To Jail . . . You Won't Get Anything Else . . . They Won't Get Their Money . . . You Won't Get The Money *1177 . . . They Won't Give Any Of That Money To You . . . Get Over It . . . Go Watch Rickie Lake . . . It's Ridiculous . . . I'll Give You $500.00 Every Two Weeks . . . Let's Try It For A While'.[3]
On February 10, 2001, Foster sent Christie an e-mail expressing his frustration with her refusal to comply with the parenting plan:
`Shellie, I haven't seen my child in four years. Do you think it's in her best interest? You are breaking the law. Believe I know. Don't find yourself in jail. I've been there. You can't handle it. You have one week to drop my kid off at the police station in Bellevue on Friday according to our [parenting plan] or I'll call the police this time and have you picked up for not following the legal agreement. If broken you are subject to criminal arrest. It's on the last page that we both signed. Go on to better things. Www World Life dot com. This is where your money would be coming from if you act a little like a family. I gave you what you wanted and you walked out on me. I never got over it because you're ruining my kid's life. I could use some administrative help and you need money. My child needs to live in a house. She's not growing up in apartments like you. So help. You can  so you can buy a house. I got your number. Be there next Friday or this time you're in trouble. Thank you.'[4]
¶ 7 The next day, Christie called 911 to report Foster's violation of the no-contact order. Deputy Wendy Billingsley from the King County Sheriff's Department responded to the 911 call. Christie provided Deputy Billingsley with the October 1999 no-contact order, the voice-mails and the e-mail. After reviewing the two voice-mails and the e-mail, Deputy Billingsley called Foster. Foster told Deputy Billingsley that he knew about the no-contact order but didn't care because he hadn't seen his daughter in four years.
¶ 8 By amended information, the State charged Foster with three counts of FVNCO in violation of RCW 26.50.110(1), (5).[5] Foster was also charged with one count of bail jumping. Pretrial, Foster stipulated to two prior convictions for violation of a no-contact order. On the first day of trial, the court read Foster's stipulation to the jury together with a limiting instruction.
¶ 9 The jury found Foster guilty as charged. The court imposed an exceptional sentence below the standard range of 15 months for each FVNCO count to run concurrently.[6] Foster appeals the FVNCO conviction and sentence.

*1178 ANALYSIS
¶ 10 For the first time on appeal, Foster claims the October 1999 no-contact order issued under RCW 10.99.050 is invalid and violates his constitutional rights because it impermissibly interferes with his fundamental right to parent. Consequently, he argues there was insufficient evidence to convict him of three counts of FVNCO.
¶ 11 To convict Foster of FVNCO, the State must prove beyond a reasonable doubt that Foster had two prior convictions for violating a no-contact or protection order, and that he violated the provisions of an existing and valid no-contact order. See RCW 10.99.050 and 26.50.110(1), (5). "The validity of a protective order is an implicit element of the crime of violation of such order." State v. Marking, 100 Wash.App. 506, 509, 997 P.2d 461 (2000); see also State v. Schultz, 106 Wash.App. 328, 331, 25 P.3d 436 (2001) (recognizing the state "must prove the validity of the no-contact order beyond a reasonable doubt").
¶ 12 Relying on State v. Ancira, 107 Wash.App. 650, 27 P.3d 1246 (2001), Foster argues the October 1999 order issued under RCW 10.99.050 violates his fundamental parental rights by precluding him from having any contact with his daughter.[7] "Parents have a fundamental liberty interest in the care, custody, and control of their children." Ancira, 107 Wash.App. at 653, 27 P.3d 1246.
¶ 13 "[A] statute is presumed to be constitutional, and the party seeking to overcome that presumption must meet [a substantial] burden of proving unconstitutionality beyond a reasonable doubt." Retired Pub. Employees v. Charles, 148 Wash.2d 602, 623, 62 P.3d 470 (2003). A successful facial challenge means there is no set of circumstances in which the statute, as written, can constitutionally be applied. City of Redmond v. Moore, 151 Wash.2d 664, 669, 91 P.3d 875 (2004).
¶ 14 RCW 10.99.050(1) provides that:
When a defendant is found guilty of a crime and a condition of the sentence restricts the defendant's ability to have contact with the victim, such condition shall be recorded and a written certified copy of that order shall be provided to the victim.
RCW 10.99.020(3) defines "[f]amily or household members" who are subject to the domestic violence statutes. The statute includes "persons who have a biological or legal parent-child relationship." RCW 10.99.020(3).
¶ 15 Here, the no-contact order was issued to protect Christie. The October 1999 no-contact order provides:
THE DEFENDANT SHALL HAVE NO CONTACT, DIRECTLY OR INDIRECTLY, IN PERSON, IN WRITING, OR BY TELEPHONE, PERSONALLY OR THROUGH ANY OTHER PERSON, WITH Shelly Christie . . . . This means: NO TELEPHONE CALLS, NO LETTERS, STAY OUT OF THEIR RESIDENCE OR WORK PLACE, DO NOT GO WITHIN 100 FEET OF THEIR RESIDENCE OR WORKPLACE, DO NOT MEET THE ABOVE-NAMED PERON OR PERSONS IN PUBLIC OR PRIVATE, AND DO NOT HAVE SOMEONE ELSE CONTACT THE ABOVE-NAMED PERSON OR PERSONS FOR YOU.[8]
The 1999 no-contact order does not prohibit Foster from having contact with his daughter; it only prohibits contact with Christie, the mother of his daughter. Therefore, Foster cannot show that the order will interfere with his right to parent, at least as constitutionally recognized.
¶ 16 This case is distinguishable from Ancira. In Ancira, the no-contact order prohibited the defendant from contacting his wife and children. Ancira, 107 Wash.App. at 652-53, 27 P.3d 1246. This court reversed, finding the order infringed on his right to parent. Id. Foster has always had the ability to ask the family court to establish visitation rights with his daughter and avoid contact *1179 with Christie. While the order may be an inconvenience, any interference with his parental rights is not substantial or beyond that which is justified by the need to protect the mother of his child. Foster cannot establish there is any infringement on his parental rights and we conclude the no-contact order issued under RCW 10.99.050 is valid.
¶ 17 The remainder of this opinion has no precedential value. Therefore, it will not be published, but has been filed for public record. See RCW 2.06.040; CAR 14.
NOTES
[1] 26.50.060 provides in pertinent part:
(1) Upon notice and after hearing, the court may provide relief as follows:
(a) Restrain the respondent from committing acts of domestic violence;
(b) Exclude the respondent from the dwelling that the parties share, from the residence, workplace, or school of the petitioner, or from the day care or school of a child;
(c) Prohibit the respondent from knowingly coming within, or knowingly remaining within, a specified distance from a specified location;
(d) On the same basis as is provided in chapter 26.09 RCW, the court shall make residential provision with regard to minor children of the parties. However, parenting plans as specified in chapter 26.09 RCW shall not be required under this chapter;
. . .
(f) Order other relief as it deems necessary for the protection of the petitioner and other family or household members sought to be protected, including orders or directives to a peace officer, as allowed under his chapter;
. . .
(h) Restrain the respondent from having any contact with the victim of domestic violence or the victim's children or members of the victim's household.
[2] 10.99.050 provides in part:
(1) When a defendant is found guilty of a crime and a condition of the sentence restricts the defendant's ability to have contact with the victim, such condition shall be recorded and a written certified copy of that order shall be provided to the victim.
(2)(a) Willful violation of a court order issued under this section is punishable under RCW 26.50.110.
[3] Clerk's Papers (CP) at 97.
[4] Report of Proceedings (RP) (2/11/03) at 24-25.
[5] 26.50.110(1)(5) provides that:
(1) Whenever an order is granted under this chapter, chapter 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or there is a valid foreign protection order as defined in RCW 26.52.020, and the respondent or person to be restrained knows of the order, a violation of the restraint provisions, or of a provision excluding the person from a residence, workplace, school, or day care, or of a provision prohibiting a person from knowingly coming within, or knowingly remaining within, a specified distance of a location, or of a provision of a foreign protection order specifically indicating that a violation will be a crime, for which an arrest is required under RCW 10.31.100(2)(a) or (b), is a gross misdemeanor except as provided in subsections (4) and (5) of this section. Upon conviction, and in addition to any other penalties provided by law, the court may require that the respondent submit to electronic monitoring. The court shall specify who shall provide the electronic monitoring services, and the terms under which the monitoring shall be performed. The order also may include a requirement that the respondent pay the costs of the monitoring. The court shall consider the ability of the convicted person to pay for electronic monitoring.
. . . .
(5) A violation of a court order issued under this chapter, chapter 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or of a valid foreign protection order as defined in RCW 26.52.020, is a class C felony if the offender has at least two previous convictions for violating the provisions of an order issued under this chapter, chapter 10.99, 26.09, 26.10, 26.26, or 74.34 RCW. . . .
[6] The standard range sentence for the FVNCO conviction was 22-29 months. Foster was also convicted of bail jumping and received a standard range sentence. Foster does not challenge the bail jumping conviction or sentence on appeal.
[7] Foster does not attempt to invoke any protections of the Washington State Constitution or address the requirements of State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986).
[8] Exhibit (Ex.) 12 (emphasis added).