# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  52527-5-II |
| Respondent, | |
| v. | |
| ISREAL ALLEN PLACENCIA McGUIRE, | PUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Israel Allen Placencia McGuire appeals the trial court's denial of his CrR 7.8 motion to modify the 10-year domestic violence no contact order prohibiting all contact with the mother of his child.  He argues that the no contact order interferes with his fundamental right to parent their shared child, who was born after the trial court entered the no contact order.  Because the no contact order provided no exception for contact with the mother through the court or counsel sufficient to allow McGuire to establish paternity and/or seek contact with the child through the courts, we hold that the trial court erred when it denied McGuire's CrR 7.8(b)(5) motion to modify the no contact order, reverse the order denying the motion to modify, and remand for further proceedings.

## FACTS

McGuire assaulted his former girlfriend after breaking down the door to his grandfather's residence.  The State charged McGuire with residential burglary and fourth degree assault and alleged that both of these offenses were domestic violence incidents.

McGuire pleaded guilty to the amended charge of second degree burglary, with a domestic violence allegation. In his statement of defendant on plea of guilty, McGuire acknowledged that the State would recommend that he have no contact with the victim.[1] The trial court accepted the guilty plea.

At the sentencing hearing, the State recommended a 10-year no contact order prohibiting contact with McGuire's former girlfriend. Defense counsel stated that this was a joint recommendation. But defense counsel later commented,

> The victim in this case is now living, I believe, in West Virginia. I don't know her attitude about the no contact order. I do know that the State requested that; that was our agreement in reaching this plea agreement. I anticipate the Court's going to sign it. She's not present today. I anticipate in the future she may address the Court in some other forum to have this either lifted or modified. One of the reasons for that is she is pregnant with Mr. McGuire's child, and so Mr. McGuire wants to have contact with that child, although he understands he can't have contact with the victim, the victim in this case, so that's going to complicate things going forward.

Report of Proceedings (RP) (June 15, 2017) 8-9. Without discussing whether the no contact order would affect McGuire's ability to seek contact with the child once it was born, the trial court advised the parties that it was going to issue a no contact order.

The June 2017 judgment and sentence contains a domestic violence no contact order prohibiting McGuire from contacting his former girlfriend for 10 years. The court ordered that "[t]he defendant shall not have contact with [his former girlfriend] including, but not limited to,

---

[1] This acknowledgement states, in its entirety, "The prosecuting attorney will make the following recommendation to the judge: 22 months, $100 DNA, $200 costs, $500 DAC, Restitution, NCO w/V, $500 CVPA." Clerk's Papers at 9. The acknowledgment does not state the parameters of the no contact order.

personal, verbal, telephonic, written or contact through a third party for 10 years (not to exceed

the maximum statutory sentence)." Clerk's Papers (CP) at 24.

That same day, the trial court issued a separate 10-year domestic violence no contact order

under chapters 10.99 and 26.50 RCW. The order provided "that [McGuire] shall have no contact,

directly or indirectly, in person, in writing, by telephone, or electronically, either personally or

through any other persons with" his former girlfriend for 10 years. CP at 62. Neither the judgment

and sentence nor the separate no contact order provided for contact through the courts or counsel

in order to establish paternity or to facilitate contact with the then unborn child.

In April 2018, McGuire filed a pro se motion[2] in the trial court asking the trial court to

modify the no contact order because the order "ha[d] the collateral consequences of abridging [his]

fundamental right to parent his child without being afforded due process." CP at 39. McGuire

asserted that the existing no contact order had been entered without any consideration of his

parental rights and was not narrowly tailored. He alleged that the child had been born in November

2017, and requested that the no contact order be modified to allow him to have contact with his

former girlfriend via mail or electronic or telephonic communication.

The trial court denied the motion to modify, stating:

I'm going to deny the motion. Number one, the child wasn't born when you were
convicted and the child isn't listed in the no contact order.

　　　Number two, you have a remedy. Your remedy is to get a lawyer, get a
parenting plan, and seek visitation with your kids. There's nothing in that judgment
and sentence that precludes you from having contact with your children other than

---

[2] In his motion, McGuire states that he was seeking relief under CrR 7.8(b)(1) or (b)(5).

you can't contact your wife,[3] but you have other remedies, so I'm going to deny the motion.

RP (May 18, 2018) at 3.

McGuire appeals the trial court's denial of his motion to modify the no contact order.

ANALYSIS

I. USE OF CrR 7.8 MOTION AND PLEA AGREEMENT

As a preliminary matter, we must first address the State's arguments that (1) McGuire could not request modification of the no contact order through a CrR 7.8 motion, and (2) he waived any defect in the no contact order because he agreed to the no contact order in his plea. We disagree.

The State argues that the trial court did not err in denying the CrR 7.8 motion because the birth of the child was not an extraordinary or unforeseen circumstance warranting relief and the circumstances were known when the trial court entered the judgment and sentence.[4] "CrR 7.8(b)(5) will not apply when the circumstances used to justify the relief existed at the time the judgment was entered." *State v. Smith*, 159 Wn. App. 694, 700, 247 P.3d 775 (2011) (citing *State v. Cortez*, 73 Wn. App. 838, 842, 871 P.2d 660 (1994)). Here, although the trial court and the parties were aware of the pregnancy, there was no child in existence at the time the trial court issued the no contact order and, at least in the context of the court's issuance of a no contact order, McGuire had no parental rights to protect until the birth of the child. Thus, the circumstances used

---

[3] The record does not show that McGuire's former girlfriend was his wife.

[4] The State also argues that the trial court did not err in denying the CrR 7.8 motion because McGuire brought the motion under the "inadvertence" prong of CrR 7.8(b)(1) and failed to establish inadvertence because the trial court was aware of the pregnancy at the time of the sentencing. Br. of Resp't at 9. Because we hold that McGuire properly challenged the no contact order under CrR 7.8(b)(5), we do not address this argument.

to justify relief did not exist when the no contact order was entered and McGuire properly brought his motion to modify under CrR 7.8(b)(5).

The State also suggests that McGuire is bound by the no contact order because he agreed to it as part of his plea deal. Although McGuire agreed to a no contact order, he did not agree to the specific parameters of the no contact order. Thus, there is nothing in the record demonstrating that McGuire agreed to limit contact with his former girlfriend to the extent it precluded his ability to contact the child once it was born.

## II. CONSTITUTIONAL RIGHT TO PARENT

We now turn to McGuire's argument. McGuire argues that the trial court abused its discretion when it denied his CrR 7.8[5] motion to modify the no contact order because the no contact order interfered with his fundamental right to parent his child by prohibiting all direct or indirect contact with his former girlfriend. We agree.

### A. LEGAL PRINCIPLES

We review a trial court's denial of a CrR 7.8 motion for abuse of discretion. *State v. Bratton*, 193 Wn. App. 561, 563, 374 P.3d 178, 179 (2016). "A trial court abuses its discretion when it bases its decisions on untenable or unreasonable grounds." *Bratton*, 193 Wn. App. at 563.

"A court has jurisdiction to amend a judgment to correct an erroneous sentence, where justice requires, under CrR 7.8." *State v. Hardesty*, 129 Wn.2d 303, 315, 915 P.2d 1080 (1996). CrR 7.8(b)(5) allows a defendant to move to modify a judgment and sentence for "[a]ny other

---

[5] We note that McGuire could have also moved to modify the separate no contact order under RCW 26.50.130, but such a motion would have required notice to all parties and there is nothing in the record demonstrating that such notice was provided. Nor is it clear that McGuire could have provided the required notice without violating the no contact order.

reason justifying relief from the operation of the judgment." A violation of a fundamental constitutional right, such as the right to parent, would be a reason to justify relief.

RCW 9.94A.505(9)[6] authorizes trial courts to impose "crime-related prohibitions," such as no contact orders, as a condition of a sentence. *State v. Armendariz*, 160 Wn.2d 106, 120, 156 P.3d 201 (2007). But the right to the care, custody, and companionship of one's children constitutes a fundamental constitutional right, so sentencing conditions burdening this right "must be 'sensitively imposed' so that they are 'reasonably necessary to accomplish the essential needs of the State and public order.'" *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 377, 229 P.3d 686 (2010) (quoting *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008)). A crime-related prohibition that interferes with a fundamental constitutional right is lawful only when it is narrowly drawn and there is "no reasonable alternative way to achieve the State's interest." *Warren*, 165 Wn .2d at 34-35).

B. UNCONSTITUTIONAL LIMITATION OF THE RIGHT TO PARENT

Citing *Rainey*, *State v. Torres*, 198 Wn. App. 685, 393 P.3d 894 (2017), and *State v. Ancira*, 107 Wn. App. 650, 27 P.3d 1246 (2001), McGuire argues that the no contact order prohibiting all contact with his former girlfriend impairs his fundamental right to parent his child. He contends that because the no contact order fails to provide any exception for contact through the courts or counsel, it places him in fear of violating the order should he attempt to seek or maintain contact with the child. *Rainey*, *Torres*, and *Ancira* are inapposite because they address no contact orders

---

[6] The legislature amended this statute in 2019, renumbering the relevant subsection. Laws of 2019, ch. 191 § 3. Because the text of the subsection has not changed, we cite to the current version of the statute.

expressly prohibiting contact with the child, which is not the case here. *Rainey*, 168 Wn.2d at 373-74; *Torres*, 198 Wn. App. at 689; *Ancira*, 107 Wn. App. at 652-53. But we agree with McGuire that the broad scope of the no contact order here interferes with his right to parent.

The trial court refused to modify the no contact order because the no contact order did not apply to the child and McGuire could seek contact with the child through the family court. But the trial court failed to consider that the broad language of the no contact order could prohibit McGuire from pursuing any parentage or parenting plan action in the family court if he was unable to contact his former girlfriend by any means. *See State v. Long*, 169 N.H. 283, 285, 287, 146 A.3d 619 (2016) (holding that a no contact provision precluding defendant from contact with the mother of his child "in any manner whatsoever," "precluded [the defendant] from exercising his constitutional right to access the courts to protect his fundamental right to parent").

For instance, if McGuire were to pursue a parentage action he would be required to give notice of the proceeding to "[t]he woman who gave birth to the child," here his former girlfriend. RCW 26.26A.410(1)(a). Since this "[n]otice must be by service of the summons and complaint," it would require contact with his former girlfriend through a third party, which is expressly prohibited, without exception, by the no contact order. RCW 26.26A.410(4). Because the no contact order prohibited all contact, including contact through the court or counsel, the trial court erred when it denied the motion to modify.

The State's reliance on *State v. Foster*, 128 Wn. App. 932, 117 P.3d 1175 (2005), does not alter our conclusion. In *Foster*, Division One of this court addressed whether a no contact order that the defendant violated was valid. 128 Wn. App. at 938. The court determined that because the no contact order prohibited contact with only the child's other parent and did not include the

7

child and because the defendant "always had the ability to ask the family court to establish visitation rights with his daughter and avoid contact with" the child's mother, the order did not violate the defendant's constitutional right to parent the child and was a valid no contact order. *Foster*, 128 Wn. App. at 939-40.

But in *Foster*, unlike here, there was already an existing parenting plan. Additionally, the court presumed, without citation to authority, that the defendant could address parenting issues through the family court despite the broad language in the no contact order. 128 Wn. App. at 939-40. As discussed above, the no contact order here prohibits *all* contact and provides no exception for contact through the courts or counsel, which precludes McGuire from attempting to address any parentage or parenting issue through the court. Accordingly, we are not persuaded by *Foster*.

The State further argues that the trial court did not err in denying the motion to modify the no contact order because McGuire failed to make an affirmative showing that he is the father of the child. The State asserts that McGuire must first establish parentage through the family court under RCW 26.26A.400, before he can assert he has a fundamental right to parent and argues that allowing McGuire "a lever against his domestic violence victim is not the proper remedy for [McGuire's] grievance." Br. of Resp't at 11.

The State fails to acknowledge that if McGuire were to pursue a parentage action he would be required to give notice of the proceeding to "[t]he woman who gave birth to the child," here his former girlfriend, and that this notice itself could violate the no contact order. RCW 26.26A.410(1)(a); RCW 26.26A.410(4). Because the act of pursuing a parentage action would itself violate the no contact order, we decline to require McGuire to establish parentage before seeking to modify the no contact order.

CONCLUSION

We hold that the trial court erred when it denied McGuire's CrR 7.8(b)(5) motion to modify the no contact order, we reverse the order denying the motion to modify, and we remand for further proceedings. On remand, the trial must reconsider the no contact order in light of its potential to impair McGuire's fundamental right to parent and ensure that any restriction on contact is "'reasonably necessary to accomplish the essential needs of the State and public order.'" *Rainey*, 168 Wn.2d at 377 (quoting *Warren*, 165 Wn.2d at 32).

SUTTON, J.

We concur:

WORSWICK, P.J.

CRUSER, J.