# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57484-5-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| CHARLES EDWARD PASCHAL, | |
| Appellant. | |

MAXA, J. – Charles Paschal appeals the sentence imposed for his convictions of first degree assault-domestic violence and unlawful imprisonment-domestic violence. He primarily challenges the provisions in his judgment and sentence prohibiting contact with the victim, his then-girlfriend, KM. Paschal also appeals the trial court's imposition of the following legal financial obligations (LFOs): the jury demand fee, the crime victim penalty assessment (VPA), the DNA collection fee,67uty and the provision providing for accrual of interest on the ordered restitution.

Paschal and KM have two children together. Paschal argues that the no contact provisions violated his constitutional right to parent because they did not provide an exception for contacting his children. In the alternative, he argues that he received ineffective assistance of counsel because defense counsel did not object to the no contact provisions.

We hold that (1) Paschal has not established that his constitutional right to parent was violated and therefore he cannot challenge the no contact provisions for the first time on appeal;

(2) Paschal did not receive ineffective assistance of counsel because defense counsel's failure to object may have been strategic; (3) the jury demand fee, the VPA, and the DNA collection fee must be stricken from the judgment and sentence; and (4) on remand, the trial court must consider under RCW 10.82.090(2) whether interest should accrue on Paschal's restitution obligation.

Accordingly, we affirm the no contact provisions in the judgment and sentence, but we remand for the trial court to strike the jury demand fee, the VPA and the DNA collection fee from Paschal's judgment and sentence and to consider whether to waive interest on Paschal's restitution obligation.

FACTS

*Background*

In March 2013, Paschal and KM were at KM's home with their two minor children – ages seven and 17 months – and Paschal's daughter from another relationship. The youngest child was asleep downstairs, and the other two children were in the upstairs master bedroom.

Over the course of several hours, Paschal violently assaulted KM. He hit her in the face, removed her clothes, forced her to perform oral sex, and prevented her from escaping. Paschal also placed KM in a stranglehold, covering her mouth and nose with his hand.

The assault occurred within earshot of the three children. At one point during the incident, the children who were upstairs observed the assault and began screaming. Paschal went to the children and KM ran out the back door to a neighbor's house. The neighbor called 911. One of the paramedics who treated KM knew her socially, but did not recognize her because her facial injuries were so severe.

No. 57484-5-II

*Procedural History*

A jury found Paschal guilty of first degree assault, first degree rape, unlawful imprisonment, and two counts of second degree assault. The jury also found that the special allegation that the offense involved domestic violence and occurred within sight or sound of either the victim or the offender's minor children applied. The trial court sentenced Paschal to an exceptional sentence of 360 months. The sentence included a no contact provision prohibiting Paschal from coming within 1,000 feet of KM for 100 years.

Paschal appealed, and this court reversed Paschal's first degree rape conviction. *State v. Paschal*, No. 47379-8-II (Wash. Ct. App. Nov. 22, 2016) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2047379-8-II%20Unpublished%20Opinion.pdf. On remand, the trial court vacated Paschal's rape conviction and again sentenced him to 360 months. The sentence included a no contact provision prohibiting Paschal from coming within 1,000 feet of KM, with no end date. The judgment and sentence also included a community custody condition that Paschal not have contact with KM during his 36 months of community custody. This court affirmed the new sentence. *State v. Paschal*, No. 50136-8-II/No. 50746-3-II (Wash. Ct. App. Dec. 18, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2050136-8-II%20Unpublished%20Opinion.pdf.

In March 2021, Paschal filed a CrR 7.8(b)(2) motion to correct the judgment and sentence in light of *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021) because his offender score included a conviction for unlawful possession of a controlled substance. At resentencing, the trial court reduced Paschal's sentence from 360 to 347 months. The sentence included a no contact provision prohibiting Paschal from coming within 1,000 feet of KM, with no end date. The provision prohibited Paschal from contacting KM in any way, "including, but not limited to,

3

personal, verbal, telephonic, written or contact through a third party." Clerk's Papers at 206. The judgment and sentence also included a community custody condition that Paschal not have contact with KM during his 36 months of community custody. Paschal did not object to either of the no contact provisions.

The trial court also imposed a $250 jury demand fee, the $500 VPA, the $100 DNA collection fee, and $2,253.33 in restitution. The judgment and sentence provided that interest would accrue on the restitution obligation. The trial court found that Paschal was indigent under RCW 10.101.010(3)(a).

Paschal appeals his sentence.

ANALYSIS

A.   NO CONTACT PROVISIONS

Paschal argues that the trial court violated his fundamental right to parent by including no contact provisions regarding KM in the judgment and sentence with no exception for communicating with his children or contact required by court proceedings. We conclude that Paschal cannot challenge the no contact provisions for the first time on appeal.

1.   Legal Principles

RCW 9.94A.505(9) authorizes the trial court to impose "crime-related prohibitions" as part of a sentence. A crime-related prohibition prohibits "conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). No contact provisions in a judgment and sentence can be crime-related prohibitions. *State v. Duran*, 16 Wn. App. 2d 583, 587, 481 P.3d 623 (2021).

We review a trial court's imposition of crime-related prohibitions and community custody provisions for an abuse of discretion. *Id.* (crime-related prohibitions); *State v.*

4

*Wallmuller*, 194 Wn.2d 234, 238, 449 P.3d 619 (2019) (community custody provisions). And the abuse of discretion standard applies even if the constitutional right to parent is implicated. *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 374-75, 229 P.3d 686 (2010). However, the imposition of an unconstitutional sentencing condition necessarily constitutes an abuse of discretion. *Wallmuller*, 194 Wn.2d at 238.

A parent's care, custody, and companionship of their children is a fundamental constitutional right. *State v. DeLeon*, 11 Wn. App. 2d 837, 841, 456 P.3d 405 (2020). "More careful review of sentencing conditions is required where those conditions interfere with a fundamental constitutional right." *State* v. *Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). Sentencing conditions that interfere with parenting rights must be " 'reasonably necessary to accomplish the essential needs of the State and public order.' " *DeLeon*, 11 Wn. App. 2d at 840-41 (quoting *Warren*, 165 Wn.2d at 32). In addition, such conditions " 'must be narrowly drawn,' " and " '[t]here must be no reasonable alternative way to achieve the State's interest.' " *DeLeon*, 11 Wn. App. 2d at 841 (quoting *Warren*, 165 Wn.2d at 34-35).

A trial court can impose a condition restricting a defendant's access to his or her own children only if the condition is "reasonably necessary to further the State's compelling interest in preventing harm and protecting children." *State v. Corbett*, 158 Wn. App. 576, 598, 242 P.3d 52 (2010).

"[T]he interplay of sentencing conditions and fundamental rights is delicate and fact-specific, not lending itself to broad statements and bright line rules." *Rainey*, 168 Wn.2d at 377. However, the trial court must conduct this inquiry on the record. *DeLeon*, 11 Wn. App. 2d at 841. The trial court must expressly "(a) consider the constitutional right to parent, (b) explain why the no-contact provision is necessary, and (c) explore whether any viable less restrictive

alternatives exist." *State v. Reedy*, 26 Wn. App. 2d 379, 392, 527 P.3d 156 (2023). Remand is required if the trial court does not address the defendant's constitutional right to parent before prohibiting all contact with their children. *DeLeon*, 11 Wn. App. 2d at 841.

2.    Failure to Object in Trial Court

The State argues that we should not consider Paschal's claim because he did not object to the no contact provisions in the trial court and he cannot show a manifest constitutional error. We agree.

A defendant may challenge a sentencing condition for the first time on appeal only if imposition of the condition constitutes manifest constitutional error or the condition is illegal or erroneous as a matter of law. *State v. Peters*, 10 Wn. App. 2d 574, 583, 455 P.3d 141 (2019); *see also* RAP 2.5(a)(3).

The threshold issue here is whether the no contact provisions present a constitutional issue. A sentencing condition that prohibits all contact with the defendant's children obviously implicates the constitutional right to parent. *See Rainey*, 168 Wn.2d at 374. But the trial court here did not prohibit contact with Paschal's children, only with the children's mother. The question is whether the no contact provisions violate Paschal's constitutional right to parent.

Paschal emphasizes that he is prohibited from contacting KM in order to facilitate communications with his children or to address legal matters regarding the children. He also claims that the no contact provisions prevent him from pursuing any parenting plan in the family court. He argues that the provisions must have an exception for contact with KM by counsel or through the court system.

However, Paschal has made no showing that he is unable communicate with his children without contacting KM. The children now are at least 17 and 11 years old. Paschal is not

prohibited from writing letters to them or contacting them through third parties. Third parties also could facilitate phone calls or even arrange prison visits with the children. Nothing in the record suggests that the no contact provisions regarding KM interfere with or make too difficult contact between Paschal and his children.

In addition, although Paschal mentions pursuing a parenting plan, nothing in the record indicates that he has or will attempt to establish a parenting plan while he is in prison. In the event that Paschal does pursue court action and needs to serve KM, he has the ability to file a CrR 7.8 motion to ask the court to modify the no contact provisions to allow service.

Paschal relies on *State v. McGuire*, 12 Wn. App. 2d 88, 456 P.3d 1193 (2020), to argue that the no contact provisions violate his right to parent. In that case, the defendant pled guilty to second degree burglary after he assaulted his former girlfriend. *Id*. at 90. At the sentencing hearing, defense counsel noted that the victim was pregnant with the defendant's child. *Id*. at 91. The judgment and sentence contained a no contact provision prohibiting the defendant from contacting the victim for 10 years. *Id*. The child was born five months after sentencing. *Id.* at 92.

This court concluded that the no contact provision interfered with the defendant's right to parent. *Id.* at 95. The court stated that "the trial court failed to consider that the broad language of the no contact order could prohibit [the defendant] from pursuing any parentage or parenting plan action in the family court if he was unable to contact his former girlfriend by any means." *Id*. at 95-96. This was because the defendant would have to personally serve the victim – the mother of the child – in order to pursue a parentage action, which would violate the no contact provision. *Id.* at 96. The court remanded for the trial court to "reconsider the no contact order in light of its potential to impair [the defendant's] fundamental right to parent." *Id.* at 97-98.

*McGuire* is distinguishable. The key in that case was that the defendant almost certainly would need to initiate a court action to establish paternity of the victim's child, who was born after the defendant was sentenced. Here, there is no dispute regarding the parentage of Paschal's children.

This case is more similar to *State v. Phillips*, 6 Wn. App. 2d 651, 431 P.3d 1056 (2018). In that case, the defendant was convicted of second degree assault for assaulting his wife. *Id*. at 657. The trial court imposed a no-contact order regarding his wife, but the order did not include the couple's infant child. *Id*. at 675. The defendant appealed a no-contact order, arguing that it violated his fundamental right to parent by preventing him from contacting his child. *Id*. at 674.

The court noted that the trial court did not impose the no-contact order as to the child, and the trial court noted that Phillips's relatives could bring the child to see him. *Id.* at 675. The court stated,

> All the cases [the defendant] relies on specifically consider no-contact orders directly barring contact between a parent and their child. Although not having contact with [the wife] will make access to his child more difficult, it does not necessarily restrict contact between Phillips and his child. *Rainey* even suggests, "supervised visitation without the mother's presence" as an alternative to a no-contact order with the child.

*Id*. at 676 (quoting *Rainey*, 168 Wn.2d at 378). As a result, the court affirmed the no-contact order. *Id.*

We conclude that Paschal has not shown that the no contact provisions the trial court imposed violated his constitutional right to parent his children. Therefore, there is no manifest constitutional error and Paschal cannot challenge the no contact provisions for the first time on appeal.

B.     INEFFECTIVE ASSISTANCE OF COUNSEL

In the alternative, Paschal argues that he received ineffective assistance of counsel when defense counsel failed to raise the violation of his fundamental right to parent with the trial court. We disagree.

Ineffective assistance of counsel claims arise from the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Vazquez*, 198 Wn.2d 239, 247, 494 P.3d 424 (2021). To prevail on an ineffective assistance claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *Id.* at 247-48. Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id.* Prejudice exists if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have differed. *Id.* at 248.

We apply a strong presumption that defense counsel's performance was reasonable. *Id.* at 247. Defense counsel's conduct is not deficient if it was based on legitimate trial strategy or tactics. *Id.* at 248. To rebut the strong presumption that counsel's performance was effective, the defendant bears the burden of establishing the absence of any legitimate strategic or tactical reason explaining defense counsel's conduct. *Id.*

Here, defense counsel did not object to the trial court's no contact provisions regarding KM or argue that the provisions must allow Paschal to contact his children. However, defense counsel may have decided not to question the no contact provisions for tactical reasons. Defense counsel could have considered that, because Paschal's children were present during the assault, challenging the provision to allow for contact with the children would have created a risk the trial court would modify the no contact provisions to include prohibiting contact with the

9

children as well. Defense counsel may have determined that keeping quiet would eliminate that risk.

In light of the strong presumption that defense counsel's performance was reasonable, Paschal fails to establish that this decision by defense counsel lacked any legitimate strategic or tactical rationale. Therefore, we conclude that defense counsel's performance was not deficient.[1]

We hold that Paschal's ineffective assistance of counsel claim fails.

C.      CHALLENGED LFOs

1.    Jury Demand Fee

The jury demand fee is a discretionary cost. RCW 10.01.160(2). Trial courts cannot order defendants to pay costs if the defendant is indigent at the time of sentencing. RCW 10.01.160(3). The trial court determined that Paschal was indigent pursuant to RCW 10.101.010(3)(a). Therefore, the jury demand fee must be stricken from the judgment and sentence.

2.    Crime Victim Penalty Assessment

Effective July 1, 2023, RCW 7.68.035(4) prohibits courts from imposing the VPA on indigent defendants as defined in RCW 10.01.160(3). *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). For purposes of RCW 10.01.160(3), a defendant is indigent if they meet the criteria in RCW 10.101.010(3)(a)-(c). Although this amendment took effect after Paschal's sentencing, it applies to cases pending on appeal. *Ellis*, 27 Wn. App. 2d at 16.

---

[1] Even if defense counsel's performance was deficient, there is no indication that his failure to raise the right to parent issue prejudiced Paschal. We hold above that Paschal has not shown that the no contact provisions violated his constitutional right to parent, and the trial court may have reached the same conclusion.

The trial court determined that Paschal was indigent under RCW 10.101.010(3)(a). Therefore, the $500 VPA must be stricken from the judgment and sentence.

### 3. DNA Collection Fee

Former RCW 43.43.7541 (2018) previously provided that the DNA collection fee was mandatory. However, effective July 1, 2023, the legislature eliminated this provision. RCW 43.43.7541; LAWS OF 2023, ch. 449, § 4. Although this amendment took effect after Paschal's resentencing, it applies to this case because it is on direct appeal. *Ellis*, 27 Wn. App. 2d at 16.

Therefore, we remand for the trial court to strike the $100 DNA collection fee from the judgment and sentence.

### D. INTEREST ON RESTITUTION

Paschal argues that this case should be remanded to enable the trial court to determine whether to waive interest on restitution. We agree.

Effective January 1, 2023, RCW 10.82.090 was amended to add a subsection stating that that "the court may elect not to impose interest on any restitution the court orders." RCW 10.82.090(2); LAWS OF 2022, ch. 260, § 12. In making this determination, trial courts "shall inquire into and consider" a number of factors, including whether the offender is indigent as defined in RCW 10.101.010(3), the offender's available funds, whether the offender is homeless, and whether the offender is mentally ill. RCW 10.82.090(2). In addition, courts must consider the victim's input, if any, as it relates to any financial hardship caused to the victim if interest is not imposed, along with any other information the court believes to be related to not imposing interest on restitution. RCW 10.82.090(2).

Although this amendment took effect after Paschal's resentencing, it applies to Paschal because this case is on direct appeal. *Ellis*, 27 Wn. App. 2d at 16.

11

We remand for the trial court to determine whether to waive interest on restitution under RCW 10.82.090(2).

## CONCLUSION

We affirm the no contact provisions in the judgment and sentence, but we remand for the trial court to strike the jury demand fee, the VPA, and the DNA collection fee from Paschal's judgment and sentence and to consider whether to waive interest on Paschal's restitution obligation.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

LEE, J.

GLASGOW, C.J.