IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 86050-0-I |
| Respondent, | DIVISION ONE |
| v. | |
| LOUIS CONS, | UNPUBLISHED OPINION |
| Appellant. | |

SMITH, J. — The State charged Louis Cons with rape in the third degree for an incident involving his then wife, N.S. During voir dire, one of the prospective jurors expressed hesitation when asked if they could be fair and impartial on a case about sexual assault. The juror was impaneled. The jury found Cons guilty. Cons's sentence included community custody conditions requiring Cons to submit to urinalysis/breath analysis, consent to home inspections, and have no direct or indirect contact with N.S. Cons appealed. Because the juror did not exhibit actual bias and Cons is no longer subject to community custody conditions, we affirm. But we remand with instructions to correct the scrivener's error and modify the judgment and sentence to reflect the terms of the no-contact order.

FACTS

Louis Cons and N.S. married in 2016 and had two children together. In June 2021, Cons raped N.S. The couple subsequently separated and divorced.

The State charged Cons with rape in the third degree predicated on lack of consent.

Prior to jury selection for trial, a questionnaire was sent to prospective jurors and the responses were provided to the parties. Prospective juror 64 provided the following answers:

> 34. Have you been the victim of sexual assault, misconduct, or abuse, either as a child or as an adult? [Answer: No.]
>
> 35. Has a family member or close friend ever been the victim of sexual assault, misconduct or abuse? [Answer: Yes.]
>
> 36. Have you been accused of committing sexual assault or misconduct? [Answer: No.]
>
> 37. Has a close friend or relative been accused of committing sexual assault or misconduct? [Answer: No.]
>
> 38. Have you ever had anyone report an incident of sexual abuse or misconduct to you personally? [Answer: Yes.]
>
> 39. Do you have any specialized knowledge or education regarding sexual assault, sexual abuse, or sexual misconduct? [Answer: Yes.]
>
> 49. Members of the jury have the duty to follow the law as defined by the Court, regardless of what you personally believe the law is or should be. Do you believe you may have difficulty following the Court's instructions on the law? [Answer: No.]
>
> 50. Do you have any concerns for any reason about your ability to be a fair and impartial juror in this case? [Answer: No.]

During voir dire, the State asked juror 64 several questions about their previous experience as a juror.

> [State]: [I]n your opinion, since you've been a juror, what kind of qualities make a good juror, in your opinion?"
>
> Juror: Open mind, trying to see both sides.
>
> [State]: And, I assume that you also had to talk to some people about — talk to each other, kind of about the facts of the case and kind of come to a conclusion on that. What kind of skills does a juror have in communication? A good juror?
>
> Juror: You mean like when you were deliberating?

2

[State]: Yes.

Juror: Just trying to, like, again, just being open to everyone's opinions; trying to see everyone's sides, good or bad or otherwise; and just trying to reach a conclusion.

The State also inquired further into juror 64's questionnaire answers:

[State]: And Juror No. 64, you marked that you have some experience with sexual assault. And so, with your experience regarding sexual assault, do you think it would be hard for you to sit on a trial with that kind of subject matter being discussed?

Juror: Probably.

[State]: Do you think you could be fair and impartial and kind of put your own experiences regarding this tough subject matter to the side, to look at this case for what it is, and listen to the facts and the evidence as they come out?

Juror: I'm not sure. It'd be probably pretty difficult for me.

[State]: Okay. And when you say "pretty difficult," do you think that you — if, for instance, the State has to present a certain amount of evidence, right, to be beyond a reasonable doubt to the jurors, to prove beyond a reasonable doubt that this crime happened? If the juror (sic) — if the State did not present enough evidence, would you still be able to find somebody guilty of a crime?

Juror: I'm not sure. I'd have to hear the evidence. I don't know. I can't answer that completely.

Cons did not ask any questions of juror 64. Each party used all seven of their preemptory challenges. Juror 64 was assigned seat number nine on the jury. The jury convicted Cons as charged.

The court sentenced Cons to six months of confinement and imposed community custody conditions. The community custody conditions required Cons to, among others, have no direct or indirect contact with the victim (N.S.), consent to home visits to monitor compliance with supervision, and submit to urinalysis and breath analysis upon request.

3

Cons appeals, contending (1) the trial court abused its discretion when it failed to excuse juror 64; (2) he had ineffective assistance of counsel, (3) the community custody conditions were unconstitutional, and (4) the community custody conditions contained a scrivener's error.

ANALYSIS

Juror Bias

Cons alleges the trial court abused its discretion when it did not excuse juror 64 for bias. The State contends juror 64 did not demonstrate actual bias and, therefore, the court did not err. We agree with the State.

We review a trial court's decision regarding a biased juror for an abuse of discretion. *State v. Smith*, 3 Wn.3d 718, 727, 555 P.3d 850 (2024). A trial court abuses its discretion if "no reasonable judge would have made the same decision." *Smith*, 3 Wn.3d at 727.

This court will consider unpreserved errors on appeal if the error constitutes a " 'manifest error affecting a constitutional right.' " *State v. Irby*, 187 Wn. App. 183, 192, 347 P.3d 1103 (2015) (quoting RAP 2.5(a)(3)). "A constitutional error is manifest where there is prejudice, meaning a plausible showing by the appellant that the asserted error had practical and identifiable consequences in the trial." *Irby*, 187 Wn. App. at 193.

"The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant the right to trial by an impartial jury." *State v. Guevara Diaz*, 11 Wn. App. 2d 843, 854, 456 P.3d 869 (2020). When a trial court seats a juror with bias, it violates

4

this constitutional right and amounts to manifest error. *Guevara Diaz*, 11 Wn. App. at 852. The remedy for impaneling a biased juror is reversal. *State v. Lawler*, 194 Wn. App. 275, 281, 374 P.2d 278 (2016).

If the trial court is presented with a biased juror, the judge has "an independent obligation" to dismiss the prospective juror for cause, "regardless of inaction by counsel or the defendant." *Irby*, 187 Wn. App. at 193. A juror exhibits actual bias when they display " 'the existence of a state of mind . . . in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging.' " *Smith*, 3 Wn.3d at 724 (quoting RCW 4.44.170). Actual bias requires proof, whereas implied bias is "conclusively presumed from the facts shown." *State v. Noltie*, 116 Wn. 2d 831, 838, 809 P.2d 190 (1991). Equivocal answers alone do not require a juror to be excused for cause. *Lawler*, 194 Wn. App. at 283. But, equivocal statements during voir dire, combined with objective factors, may amount to actual bias. *Smith*, 3 Wn.3d at 727.

To determine whether actual bias exists, the court must "carefully assess the juror's statements, and any additional information revealed in juror questionnaires or during voir dire." *Smith*, 3 Wn.3d at 727. The question becomes, " 'whether a juror with preconceived ideas can set them aside.' " *State v. Sassen Van Elsloo*, 191 Wn.2d 798, 809, 425 P.3d 807 (2018) (quoting *Noltie*, 116 Wn.2d at 839). "[T]he court must be satisfied, from all the circumstances, that the juror cannot disregard such opinion and try the issue impartially."

5

*Sassen Van Elsloo*, 191 Wn.2d at 808 (emphasis omitted) (quoting RCW 4.44.190). To show actual bias, the likelihood that the juror is biased must be "probable," not merely "possible." *Noltie*, 116 Wn.2d at 840 (" 'On appeal, the party challenging the trial court's decision . . . must show more than a mere possibility that the juror was prejudiced.' " (quoting 14 L. ORLAND & K. TEGLAND, WASHINGTON PRACTICE, TRIAL PRACTICE § 202, at 331 (4th ed. 1986)).

When reviewing a trial court's decision regarding juror bias, we give great deference to the trial court's judgment. *Smith*, 3 Wn.3d at 727. The trial court, unlike a court of review, is in the unique position of being able to assess the juror's demeanor, facial expressions, tone of voice, and other characteristics. *Noltie*, 116 Wn.2d at 839 ("The trial court is in the best position to determine a juror's ability to be fair and impartial. It is the trial court that can observe the demeanor of the juror and evaluate and interpret the responses."). A trial court should also "exercise caution before injecting itself into the jury selection process." *Lawler*, 194 Wn. App. at 284. There may be "legitimate, tactical reasons" why trial counsel would not want to challenge a juror whose statements suggest potential bias. *Id.* at 285. If a trial court excuses a juror sua sponte, it "runs the risk of disrupting trial counsel's jury selection strategy." *Id.*

Here, Cons contends juror 64's personal experience with sexual assault, in conjunction with their equivocal answers to the State's questions, shows they were actually biased. Cons likens his situation to two Washington cases: *Guevara Diaz*, and *City of Cheney v. Grunewald*, 55 Wn. App. 807, 780 P.2d

6

1332 (1989).[1]  In *Guevara Diaz*, this court concluded the trial court erred when it did not excuse a juror for bias.  11 Wn. App. 2d. at 860-61.  On the juror questionnaire, the juror had responded "no" to the question, "Can you be fair to both sides in a case involving allegations of sexual assault or sexual abuse?"  *Id.* at 846.  The juror answered "yes" to the following questions: "Have you ever been the victim of a sexual assault or sexual abuse?" and "Has anyone close to you, family or friend, ever been the victim of a sexual assault or sexual abuse?" *Id.* at 847.

During voir dire, the State asked the juror if they could "follow the judge's instruction in reviewing the evidence even if [they] did not want someone to be punished," to which they answered, "I would be able to.  No compromising."  *Id.* at 857.  Neither the defense nor the court questioned the juror individually.  *Id.* The court and defense counsel asked several questions of the jurors as a group concerning their ability to be fair and unbiased, and the record stated that the jurors answered "yes."  *Id.* at 857.  But, on appeal, this court noted that the record did not indicate if the juror in question answered at all.  *Id.* at 857-58.  The court concluded that the juror's questionnaire clearly indicated bias, and the

---

[1] Cons also cites to two federal cases, *United States v. Kechedzian*, 902 F.3d 1023 (9th Cir. 2018), and *United States v. Gonzalez*, 214 F.3d 1109 (9th Cir. 2000).  These cases are consistent with Washington precedence.  *See, e.g., Smith*, 3 Wn.3d at 730 ("[W]e read [*Kechedzian* and *Gonzalez*] as consistent with *Noltie*, recognizing that even an equivocal statement may establish actual bias where additional objective factors—such as the juror's own experience with identical or substantially similar crimes—together with equivocal answers to follow-up questions touching on these potential sources of implicit bias cumulatively establish a probability of actual bias.")

group-directed questions could not rehabilitate the juror, as no record existed of the juror's specific responses indicating their ability to be fair. *Id.* at 858.

In *Grunewald*, the court also concluded the trial court erred when it did not excuse a juror for bias. 55 Wn. App. at 811. In that case, the State charged the defendant with driving while intoxicated. *Id.* at 808. During voir dire, one of the jurors disclosed they were a member of Mothers Against Drunk Drivers (M.A.D.D.) and their niece had been killed by an intoxicated driver. *Id.* Despite assuring the court they could be fair and impartial, they also stated that they did not think the defendant would "get a fair trial with six jurors with [their] frame of mind right now." *Id.* at 809. The court held that the juror's "personal experience based upon the death of [their] niece alone" would not disqualify them from serving, but that experience coupled with their answers to the voir dire questioning was sufficient to show actual bias. *Id.* at 810-11.

While Cons contends his case is similar to *Guevara Diaz* and *Grunewald* because juror 64 had experience with sexual assault and answered the State's questions equivocally, the circumstances are not analogous enough to warrant the same outcome (reversal). First, unlike *Guevara Diaz*, juror 64 indicated in their questionnaire that they did not have any concerns about their ability to be a fair and impartial juror. Additionally, juror 64 was subject to individual questioning from the State. And, unlike *Grunewald*, where the juror stated they did not think a jury with their frame of mind would result in a fair trial, juror 64's responses were much more equivocal.

8

Here, the circumstances are more similar to *Lawler*. In *Lawler*, a juror responded to a question concerning whether they could be fair and impartial by saying, "I don't see how" and "I don't think I would be able to." 194 Wn. App. at 283. Neither the court nor the defense followed up with this juror, and Lawler did not challenge the juror for cause or exercise a preemptory challenge to dismiss the juror. *Id.* at 283-84. The Court of Appeals concluded the trial court did not err when it did not dismiss the juror based on bias. *Id.* at 287-89. The court noted several reasons: First, it noted that the trial court is in the best position to evaluate when a juror must be dismissed. *Id.* at 287. Second, the juror's answers, "seemed to convey a vague, nonspecific discomfort with the case rather than a firm bias." *Id.* Third, the trial court was alert to the possibility of bias—it had mentioned that several jurors expressed concerns about being fair, but the court did not specifically mention juror 23. *Id.* at 287-88. Fifth, the record showed that Lawler was alert to the possibility of juror bias—he moved to excuse two jurors for cause and exercised five peremptory challenges. *Id.* at 288. Additionally, he had a preemptory challenge available that he chose not to use. *Id.* Finally, the court noted the dangers of interfering with a defendant's strategic decisions and recognized the defenses decision to not challenge the juror may have been purposeful. *Id.* at 288-89.

Similar to *Lawler*, the juror at issue here offered equivocal answers, but not a firm bias. In response to the State's first two questions, asking whether it would be hard to sit on a sexual assault trial and remain fair and impartial given their personal experience with the subject, juror 64 said "probably." This

response is equivocal, but recognizes the difficulty of serving as a juror on a case with a sensitive topic. Expressing tentativeness concerning the role as a juror is not the same as admitting an inability to complete a task. When asked whether they could find somebody guilty without the State meeting its burden, juror 64 answered, "I'm not sure. I'd have to hear the evidence. I don't know. I can't answer that completely." The juror is expressing the need to evaluate individual evidence before making a decision, indicating an ability to set aside any preconceived notions and be fair and impartial. At most, juror 64 demonstrated a potential for bias, but not probable bias.

Additionally, like in *Lawler*, Cons was aware of the potential of biased juror. While Cons did not challenge juror 64, Cons did challenge another juror because of their experiences with trauma. And the trial court itself raised the issue of striking a juror for cause. Both Cons and the court were alert to possibilities of juror bias, and the court is in the best position to assess the all the circumstances, including juror 64's demeanor. Without more, the juror's questionnaire answers combined with their voir dire responses do not rise to the level of actual bias. Accordingly, we conclude the trial court did not err when it did not dismiss juror 64.

### Ineffective Assistance of Counsel

Cons contends his counsel was ineffective for failing to challenge juror 64 for bias. The State maintains this argument fails because juror 64 was not biased, and Con's counsel may have had strategic reasons for not challenging

10

juror 64. Because we conclude juror 64 did not express actual bias, Cons's claim for ineffective assistance of counsel fails.

Community Custody Conditions

Cons claims the community custody conditions requiring him to consent to home searches and urinalysis/breath analysis, as well as the no-contact condition prohibiting contact with N.S., violate his constitutional rights. The State contends these issues are moot and, in the alternative, are not ripe for review. We agree with the State.

1. Mootness

Ordinarily, this court will not review an issue that is moot. *State v. Gentry*, 125 Wn.2d 570, 616, 888 P.2d 1105 (1995). An issue is moot if the court can "no longer provide effective relief." *Gentry*, 125 Wn.2d at 616. But, even when an issue is moot, the court may still consider a question if it "involves matters of continuing and substantial public interest." *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012). To determine whether an issue is of continuing and substantial public interest, the court considers three factors: " '(1) whether the issue is of a public or private nature; (2) whether an authoritative determination is desirable to provide future guidance to public officers; and (3) whether the issue is likely to recur.' " *In re Marriage of Horner*, 151 Wn.2d 884, 892, 93 P.3d 124 (2004) (quoting *Westerman v. Cary*, 125 Wn.2d 277, 286, 892 P.2d 1067 (1994)).

Here, Cons does not address the issue of mootness, but the State correctly notes that Cons completed his 12-month term of community custody on

January 28, 2025. Accordingly, Cons is no longer subject to any community custody restrictions and this court cannot provide relief. Additionally, we do not find the issues raised by Cons to be of continuing and substantial public interest. While the constitutionality of community custody conditions is a question of a public nature and likely to recur, there are published cases addressing the challenges raised by Cons. *See State v. Nelson*, 4 Wn.3d 482, 508-09, 565 P.3d 906 (2025) (urinalysis and breath analysis); *State v. Cornwell*, 190 Wn.2d 296, 306, 412 P.3d 1265 (2018) (property search); *State v. Foster*, 128 Wn. App. 932, 939, 117 P.3d 1175 (2005) (no-contact order).

Because Cons's claims are moot and do not raise issues of continuing and substantial public interest, we decline review.

Scrivener's Error

We review a trial court's sentencing conditions for abuse of discretion. *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 374, 229 P.3d 686 (2010). A scrivener's error is a clerical mistake that, when amended, would correctly convey the intention of the court based on other evidence. *State v.* Priest, 100 Wn. App. 451, 455-56, 997 P.2d 452 (2000). The remedy for a scrivener's error is to remand to the trial court for correction. *State v. Sullivan*, 3 Wn. App. 2d 376, 381, 415 P.3d 1261 (2018).

1. Contact with Victim

Cons contends his judgment and sentence infringes on his right to parent. The State does not address the provisions of Cons's judgment and sentence—it focuses solely on the no-contact order. Because the judgment and sentence is

inconsistent with the no-contact order, we remand with instructions for the court to modify the judgment and sentence to reflect the provisions of the no-contact order.[2]

Here, Con's judgment and sentence includes a no-contact provision stating, "For the maximum term of 5 years, defendant shall have no contact, direct or indirect, in person, in writing, by telephone, or through third parties with: [N.S.]." But, the no-contact order, issued on the same day as the judgment and sentence states, "[D]o not contact the protected person or the above listed family and household members directly, indirectly, in person, or through others, by phone, mail, or electronic means, except for mailing or service of process of court documents through a third party, or contact by defendant's lawyers." Given that the provision of the judgment and sentence is pre-printed on the order and the no-contact order includes specific provisions concerning the parties, we conclude the trial court intended the no-contact order to control; therefore, we remand to the trial court to correct the judgment and sentence to be consistent with the no-contact order.

2. Indeterminate Sentence

Here, Cons and the State agree that Cons is not subject to the indeterminate sentencing provisions of RCW 9.94A.507. RCW 9.94A.507 governs sentencing as to certain sex offenses, not including rape in the third degree (Cons's conviction). The judgment and sentence indicate that Cons is

_____

[2] Cons does not contend the conditions of the no-contact order are unconstitutional; therefore, we need not address the constitutionality of the no-contact provision in the judgment and sentence.

13

subject to the community custody conditions of RCW 9.94A.507.  This is likely a scrivener's error.  Accordingly, we remand with instructions for the court to correct the judgment and sentence.

We affirm, but remand to correct scrivener's error and to modify the judgment and sentence to conform with the terms of the no-contact order.

WE CONCUR: