IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>          Respondent,<br><br>     v.<br><br>NATHAN WILLIAM BOSWELL,<br><br>          Appellant. | No. 85072-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DÍAZ, J. — Nathan Boswell pled guilty to robbery in the second degree and felony violation of a court order, both with domestic violence aggravators, and misdemeanor driving under the influence (DUI). At sentencing, the court imposed a no contact order (NCO) protecting the victim and imposed legal financial obligations (LFOs). Boswell appeals, arguing the NCO interferes with his fundamental right to parent his and the victim's shared child, and that the LFOs are improper. We affirm the NCO and remand solely to strike Boswell's LFOs.

I.      BACKGROUND

Boswell was in a dating relationship with S.H.[1] and they had a child together. On October 21, 2020, Boswell threatened to use force against S.H. to

---

[1] We refer to S.H. by her initials to protect her privacy.

obtain her car keys. Later that day, Boswell was in a car accident while driving S.H.'s car and showed signs of driving under the influence. Law enforcement arrested Boswell. The State charged Boswell with robbery in the second degree with a domestic violence aggravator (count 1) and with misdemeanor DUI (count 2). On November 13, 2020, the State imposed an NCO protecting S.H.

On June 14, 2021, S.H. "felt bad for him," invited Boswell to her home to celebrate their child's upcoming birthday, and let him stay with them for a few days. On June 17, Boswell hit her in the eye and broke her cell phone. On October 3, 2022, in an amended information, the State additionally charged Boswell with felony violation of an NCO with a domestic violence aggravator. Pursuant to a plea agreement, Boswell pled guilty to counts 1 and 3.

At sentencing, in arguing for a high range sentence and an NCO with S.H., the State presented Boswell's "alarming" and violent criminal history. The State argued that, should Boswell rehabilitate while incarcerated, he could seek a modification of the NCO.

In arguing for a low range sentence, Boswell's counsel described his client's history of substance use, his associated "emotional struggles," and his desire to work on each. In particular, Boswell objected to the imposition of a five-year NCO because he has shown to be a "responsible parent" and "very much" wanted to be part of his child's life. He argued that the NCO "would greatly impede his relationship with the child" and he requested "perhaps a three-year" NCO or, at a minimum, a provision in the NCO to allow him to contact S.H. for purposes of visitation and co-parenting. For her part, S.H. also asked for such contact.

Ultimately, the court imposed a mid-range sentence of 73.5 months (i.e., approximately six years) of incarceration. And most relevantly to this appeal, the trial court entered a five-year NCO protecting S.H. The sentence ordered Boswell, in part:

> do not contact the protected person, directly, indirectly, in person or through others, by phone, mail, or electronic means, except for mailing or service of process of court documents through a third party, or contact by the defendant's lawyers.

> do not knowingly enter, remain, or come within 300 feet (1,000 feet if no distance entered) of the protected person's residence, school, workplace . . .

The court imposed the following LFOs: a $500 Victim Penalty Assessment (VPA), a $100 Domestic Violence (DV) assessment, and a $15 court order violation fee. Later, the court found Boswell indigent. Boswell timely appeals.

## II.   ANALYSIS

### A.   No Contact Order

On the one hand, "[t]he plain language of the SRA supports the conclusion that trial courts may impose crime-related prohibitions, including no-contact orders, for a term of the maximum sentence to a crime." State v. Armendariz, 160 Wn.2d 106, 120, 156 P.3d 201 (2007); see also, RCW 9.94A.505(9). On the other hand, "[p]arent[s] ha[ve] a fundamental constitutional right to the care, custody, and companionship of their children." State v. DeLeon, 11 Wn. App. 2d 837, 841, 456 P.3d 405 (2020) (citing State v. Warren, 165 Wn.2d 17, 34, 195 P.3d 940 (2008)).

"We generally review sentencing conditions for abuse of discretion." In re Pers. Restraint of Rainey, 168 Wn.2d 367, 374, 229 P.3d 686 (2010). "But we

more carefully review conditions that interfere with a fundamental constitutional right, [] such as the fundamental right to the care, custody, and companionship of one's children." Id. (citing Warren, 165 Wn.2d at 32). "Such conditions must be 'sensitively imposed' so that they are 'reasonably necessary to accomplish the essential needs of the State and public order.'" Rainey, 168 Wn.2d at 374 (quoting Warren, 165 Wn.2d at 32). Still, the State has a compelling interest in preventing future harm to the victims of the crime and in protecting children. State v. Phillips, 6 Wn. App. 2d 651, 676, 431 P.3d 1056 (2018) (citing Rainey, 168 Wn.2d at 377).

Boswell argues that the trial court did not sensitively impose the NCO, thus violating his right to parent his child, because the NCO prevents him from contacting S.H. to set up visits or calls with their child. Boswell does not object to the imposition of the NCO per se, but asks for the order to be more narrowly drawn; namely, to allow third-party contact for those purposes only.

Boswell avers that his circumstances are similar to those in State v. McGuire, 12 Wn. App. 2d 88, 95-96, 456 P.3d 1193 (2020). There, a trial court imposed a ten-year NCO prohibiting McGuire from contacting his former girlfriend, who was pregnant with his child. McGuire, 12 Wn. App. 2d at 91. On appeal, McGuire argued the NCO interfered with his fundamental right to parent "because the [NCO] fail[ed] to provide any exception for contact through the courts or counsel." Id. at 95. Division II of this court held that "the broad language of the [NCO] could prohibit McGuire from pursuing any parentage or a parenting plan action in family court if he was unable to contact his former girlfriend by any means." Id. at 95-96. Thus, it interfered with his right to parent. Id. at 95.

Boswell's circumstances are distinguishable from those in McGuire. Here, while the trial court sua sponte mentioned a parenting plan during sentencing, neither the record or Boswell's briefs indicates that he wants to contact S.H. for the purpose of a forming a parenting plan.[2] And, even if Boswell, as in McGuire, needed to engage in a legal process to establish a parenting plan, the NCO allows contact with S.H. "for mailing or service of process of court documents through a third party, or contact by the defendant's lawyers."

Instead, Boswell's situation is similar to those cases in which this court has affirmed an NCO and found that logistical difficulties or "inconvenience" to an appellant does not justify even third-party contact with a victim. See, e.g., State v Foster, 128 Wn. App. 932, 940, 117 P.3d 1175 (2005) ("While the order may be an inconvenience, any interference with his parental rights is not substantial or beyond that which is justified by the need to protect the mother of his child. Foster cannot establish there is any infringement on his parental rights. . . .").

For example, in State v. Phillips, this court imposed an NCO protecting Phillips' former partner, but did not impose one protecting their shared infant child. 6 Wn. App. 2d 651, 675, 431 P.3d 1056 (2018). The court first noted that Phillips relied on caselaw that considered NCOs "barring contact between a parent and their child," not, as here, an NCO which "did not restrict communications between Phillips and his child, only between Phillips" and the child's mother. Id. at 676. In such a situation, the court remarked that, "'for example, . . . Phillips'[s] relatives

---

[2] On the contrary, as part of an exchange with the court, Boswell stated he did not "need a parenting plan for [his] kids." And he told the court he did not "need [the court] to tell [him he] need[ed] a parenting plan for [his] kids."

can bring the child to see him.'" Id. (alterations in original). And, this court concluded:

> Although not having contact with Sara will make access to his child more difficult, it does not necessarily restrict contact between Phillips and his child. Rainey even suggests, "supervised visitation without the mother's presence" as an alternative to a no-contact order with the child.

Id. (quoting Rainey, 168 Wn.2d at 378, 229 P.3d 686).

Similarly, Boswell's attorney or a responsible third party can take his child to visit him, during the pendency of the NCO. The record contains no indication that there is any particularized need to coordinate such logistics, even indirectly, between Boswell and S.H. during the five-year time frame covered by the NCO.

Ultimately, we review the trial court's decision for an abuse of discretion. Rainey, 168 Wn.2d at 374. Here, the trial court heard Boswell and S.H's concern that the NCO would impede his contact with their child, considered it, and rejected his request for the court to allow him to incidentally contact S.H., stating:

> [T]he Court views the request to allow him contact with the [child] to be an attempt to simply allow contact with Ms. [S.H.]. The no-contact order is with [S.H.], not with the three-year-old [child]. So, it should not impair his ability to have a meaningful parenting relationship with the [child].

In other words, the court assessed the credibility of Boswell and that of S.H., weighed the State's goal (to protect S.H.) against the burden on his right to parent, and effectively found the "interference with his parental rights is not substantial or beyond that which is justified by the need to protect the mother." Foster, 128 Wn. App. at 940.

We conclude that Boswell did not carry his burden to show the trial court abused its significant discretion in so finding and so ordering its NCO.

B.      Legal Financial Obligations

Boswell asks that we remand to strike the $500 VPA and the $115 DV Assessment fee.  The State agrees with both of Boswell's requests.

As noted above, at his sentencing in February 2023, the court imposed the VPA despite his indigency because, at the time, it was mandatory for such convictions.  State v. Mathers, 193 Wn. App. 913, 918, 376 P.3d 1163 (2016) (interpreting former RCW 7.68.035(1)(a)(2015)).  In 2023, our legislature amended .035 to state that "[t]he court shall not impose the penalty assessment under this section if the court finds that the defendant, at the time of sentencing, is indigent as defined in RCW 10.01.160(3)."  LAWS OF 2023, ch. 449, § 1; RCW 7.68.035(4).  Further, courts now are statutorily required to waive VPAs, even those imposed prior to the 2023 amendments, on the defendant's motion.  Id.; RCW 7.68.035(5)(b).  Thus, accepting the State's concession, we remand to the court to strike the VPA.

The DV Assessment fee, in contrast, is discretionary because trial courts "*may* impose a penalty of one hundred dollars, plus an additional fifteen dollars on any adult offender convicted of a crime involving domestic violence."  RCW 10.99.080(1) (emphasis added).  And, the court may seek the victim's input.  RCW 10.99.080(5).  Here, the trial court clearly indicated it intended to impose only mandatory fines.  And, again, the court found Boswell indigent.  Accordingly, correcting the scrivener's error and accepting the State's concession, we remand

to the court to strike the DV Assessment fee.  See, e.g., State v. Makekau, 194 Wn. App. 407, 420-21, 387 P.3d 577 (2016).

### III.    CONCLUSION

We affirm the imposition of the NCO and remand solely to strike the VPA and DV Assessment fee.

Díaz, J.

WE CONCUR:

Brenner, J                    Smith, C.J.